UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:20-CV-10719

ALEXANDRA PERKINS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF JOHN PERKINS,
               Plaintiff,
V.
UNITED STATES OF AMERICA,
               Defendant.

# COMPLAINT

## Parties

1. Plaintiff Alexandra Perkins, personal representative for the Estate of John Perkins, is an individual who resides in Central Falls, Rhode Island.

2. Defendant United States of America is the appropriate Defendant named in place of its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., located in great Barrington, Massachusetts under the Federal Tort Claims Act.

## Facts Common to All Counts

3. This is a complaint for damages arising from substandard medical care rendered to John Perkins by the United States of America. Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., which is a federally funded health clinic. As a direct result of the substandard care rendered by the defendant, Mr. Perkins suffered a premature and preventable death from Stage IV renal cell carcinoma on February 28, 2019 at the age of 51.

4. The Jurisdiction of this Court is lawful under 28 U.S.C. § 1346(b) and proper as the plaintiff lives in Massachusetts.

5. Venue is proper within this district under 28 U.S.C. § 1402(b) as the acts complained of occurred in the District of Massachusetts.

6. The plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and all statutory prerequisites to the filing of this complaint have been satisfied.

7. As of September 2011, Mr. Perkins' primary care physician was Mario Flores, M.D.

8. On 9/16/11, Mr. Perkins presented to Jose Heisecke, M.D. at Berkshire Surgical Associates for complaints of a left inguinal hernia. On examination, Dr. Heisecke was unable to palpate a hernia, but recommended and ordered a CT scan of the abdomen and pelvis to look for a hernia, and to determine the etiology of his left groin pain.

9. On 9/20/11, Mr. Perkins presented to Berkshire Medical Center where he underwent a CT scan of the abdomen and pelvis without IV contrast for a clinical history of an inguinal hernia. This study was ordered by Dr. Heisecke and Dr. Flores was identified as Mr. Perkins' primary care physician.

10. Mr. Perkins' 9/20/11 CT scan was read and interpreted by radiologist, Timothy Mahoney, M.D., whose significant finding included a 2.3 cm lesion in the interpolar right kidney. Further, Dr. Mahoney reported that there was no acute osseous abnormality and there was small fat-containing left inguinal hernia. Dr. Mahoney recommended further evaluation of the 2.3 cm right kidney lesion with a renal ultrasound or, alternatively, an MRI of the abdomen, with and without contrast.

11. There is no evidence that Dr. Flores informed Mr. Perkins of the results of the 9/20/11 CT scan, and/or that Dr. Flores ordered a renal ultrasound or MRI for further evaluation of the 2.3 cm right kidney lesion, and/or that Dr. Flores instructed Mr. Perkins to follow up for additional imaging, and/or that Dr. Flores referred Mr. Perkins to a urologist for further evaluation.

12. On 1/22/18, Mr. Perkins presented to the ED at Berkshire Medical Center with complaints of left sided flank pain which was worse upon inspiration. Chest CT was performed and confirmed a right renal mass compatible with renal cell carcinoma with osseous metastatic lesions within the T9 vertebral body and likely within the T5 and T6 vertebral bodies, with bilateral upper lobe pulmonary nodules. As noted, there was a 5.7 x 4.7 x 5.1 cm mass in the midpole of the right kidney, which had increased in size from the CT study dated 9/20/11, consistent with renal cell carcinoma. Mr. Perkins was informed of the findings, and was recommended to follow up with an oncologist.

13. On 1/29/18, Mr. Perkins met with oncologist, Dr. Michael Deleo at Berkshire Medical Center Cancer and Infusion Center. Dr. Deleo reviewed the oncologic data that was consistent with metastatic renal cell carcinoma with bone metastasis. Dr. Deleo recommended further imaging and a kidney biopsy; the results of which confirmed metastatic disease.

14. On 3/2/18, Mr. Perkins returned to see Dr. Deleo for further evaluation of his Stage IV renal cell carcinoma with extensive bone metastasis. Mr. Perkins' symptoms were notable for progressive weakness, easy fatigability/malaise, anorexia/weight loss, night sweats, dysphagia, odynophagia, dyspnea on exertion, dry cough, lower extremity edema and flank pain. Dr. Deleo noted that Mr. Perkins' prognosis was guarded as he had Stage IV disease with extensive bone metastasis. Dr. Deleo's plan was for neurosurgical intervention for stabilization of the T8 fracture, followed by palliative radiotherapy and systemic biologic therapy pending the neurosurgical evaluation.

15. On 3/20/18, Mr. Perkins underwent an MRI of the thoracic spine which found progression of disease.

16. On 3/27/18, Mr. Perkins returned to see Dr. Deleo in follow up. Mr. Perkins had been evaluated by a neurosurgeon who recommended a back brace, and not neurosurgical intervention. The plan was for Mr. Perkins to begin palliative thoracic spine radiotherapy on 3/29/18.

17. On 2/28/19, Mr. Perkins passed away from Stage IV renal cell carcinoma on at the age of 51.

18. The prognosis for a patient with renal cell carcinoma largely depends on the size of the tumor and the spread of the disease at the time of diagnosis. Renal cell carcinoma is most amenable to cure by surgical resection and/or removal of the kidney if detected and diagnosed at an early stage, thus significantly improving a patient's prognosis, and an improved chance of long term survival. When renal cell carcinoma is detected at an advanced stage with metastasis to the bone then, more likely than not, the patient will suffer a premature and preventable death, as was the case of Mr. Perkins.

19. It has been well recognized in Massachusetts from 2011 to the present that when a patient's primary care physician is identified on a radiology report for the purpose of acknowledging the results of such radiology study, the standard of care requires the average qualified internal medicine/primary care physician to: (1) recognize and appreciate the significance of the CT scan of the abdomen and pelvis that identifies an abnormality such as a 2.3 cm right kidney lesion; (2) inform the patient of the CT scan result that identifies a 2.3 cm right kidney lesion; (3) offer, order and/or perform any further studies for further evaluation as recommended by the radiologist who interpreted the CT scan including, but not limited to renal ultrasound and/or MRI of the abdomen; (4) instruct the patient to follow up and/or schedule the imaging as recommended by the radiologist; and (5) immediately refer the patient to a specialist (in this case, a urologist) for further evaluation, diagnosis, and treatment.

20. To a reasonable degree of medical certainty, the care and treatment rendered to John Perkins by the defendant, the United States of America through its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., from 9/20/11 through 1/22/18, fell below the accepted standard of care for the average qualified internal medicine/primary care physician: (1) when Dr. Flores failed to recognize and appreciate the significance of the results of the 9/20/11 CT scan of the abdomen/pelvis that identified a 2.3 cm lesion in the right kidney; (2) when Dr. Flores failed to inform Mr. Perkins of the CT scan result that identified a 2.3 cm right kidney lesion; (3) when Dr. Flores failed to offer, order and/or perform any studies for further evaluation as recommended by the radiologist who interpreted the CT scan including, but not limited to renal ultrasound and/or MRI of the abdomen; (4) when Dr. Flores failed to instruct Mr. Perkins to follow up and/or schedule the imaging as recommended by the radiologist; and (5) when Dr. Flores failed to immediately refer Mr. Perkins to a urologist for further evaluation, diagnosis, and treatment.

21.     As a direct result of the United States of America's deviations from the accepted standard of care, through its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., Mr. Perkins was not informed of the 9/20/11 CT scan result and not provided appropriate follow up and Mr. Perkins' renal cell carcinoma was not diagnosed and treated for several years, allowing it to grow and spread to the bone. Had the United States of America, through its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., rendered care in accordance with the accepted standard of care, Mr. Perkins' renal cell carcinoma would have been diagnosed and treated when it was an earlier stage and amenable to cure by surgical resection/removal. Instead, as a direct result of the United States of America's negligence, Mr. Perkins' renal cell carcinoma was not diagnosed until January 2018, by which time the cancer had grown and spread with bone metastasis which, more likely than not, caused Mr. Perkins to suffer a premature and preventable death.

22.     To a reasonable degree of medical certainty, the care and treatment rendered to John Perkins by the United States of America, through its agents, servants and employees, including but not limited to Mario Flores, M.D. and Community Health Programs, Inc., from as early as September 2011 fell below the accepted standard of care and more likely than not, directly resulted in Mr. Perkins' premature and preventable death.

## Count I.

1. The plaintiff, Alexandra Perkins, is the duly appointed Personal Representative of the Estate of John Perkins and is a resident of Central Falls, Providence County, Rhode Island.

2. The plaintiff repeats the allegations set forth above as if fully contained herein.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein its agents, servants and employees, including but not limited to Mario Flores, M.D., was an employee of Community Health Programs, Inc. which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. This action is brought to recover for the wrongful death of John Perkins for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

5. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

6. All statutory conditions precedent to filing suit have been met.

7. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, including but not limited to represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 9/20/11 through 1/22/18.

8. On or about 9/20/11 through 1/22/18, the plaintiff's decedent submitted himself to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who

negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 2/28/19.

9. The death of John Perkins and the damage to his estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, United States of America, by its agents, servants, or employees, including, but not limited to the following:

    a. Defendant's misrepresentations to the plaintiff's decedent that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about 9/20/11 through 1/22/18;

    b. Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about 9/20/11 through 1/22/18, and its failure to prescribe proper and timely treatment for said condition;

    c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

    d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

    e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition; and

    f. Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

10. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, her wrongful death claim against the defendant until 2/28/19, which is less than two (2) years from the filing of this Complaint.

WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count II.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count I above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, John Perkins.

3. As the direct and proximate result of the carelessness and negligence of the defendant, United States of America, by its agents, servants, or employees, the decedent, John Perkins, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count III.

1. The plaintiff, Alexandra Perkins, is the duly appointed Personal Representative of the Estate of John Perkins and is a resident of Central Falls, Providence County, Rhode Island.

2. The plaintiff repeats the allegations set forth above as if fully contained herein.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein its agents, servants and employees, including but not limited to Mario Flores, M.D., was an employee of Community Health Programs, Inc. which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. This action is brought to recover for the wrongful death of John Perkins for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346 and 2671 et seq.

5. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

6. All statutory conditions precedent to filing suit have been met.

7. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about 9/20/11 through 1/22/18.

8. On or about 9/20/11 through 1/22/18, the plaintiff's decedent submitted himself to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on 2/28/19.

9. The death of John Perkins and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, or by the gross negligence of the defendant on or about 9/20/11 through 1/22/18.

10. The plaintiff did not discover, nor could she have reasonably discovered in the exercise of reasonable diligence, her wrongful death claim against the defendant until 2/28/19, which is less than two (2) years from the filing of this Complaint.

   WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count IV.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count III above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, John Perkins.

3. As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, United States of America, by its agents, servants, or employees, the decedent, John Perkins, was caused to suffer consciously up to and until his time of death.

   WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## Count V.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count I above, as if expressly rewritten and set forth herein.

2. On or about 9/20/11 through 1/22/18, the defendant, United States of America, by its agents, servants, or employees, contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

3. The defendant, United States of America, by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff's decedent that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

4. On or about 9/20/11 through 1/22/18, the defendant, United States of America, by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the

average qualified members of the medical profession practicing its specialty, which breach resulted in the death of John Perkins.

5. The death of John Perkins and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, United States of America's breach of express and implied warranties.

   WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VI.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Five of Count V above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, John Perkins.

3. As the direct and proximate result of the breach of express and implied warranties by the defendant, United States of America, by its agents, servants, or employees, the plaintiff's decedent, John Perkins, was caused to suffer consciously up to and until his time of death.

   WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

## Count VII.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Ten of Count I above, as if expressly rewritten and set forth herein.

2. On or about 9/20/11 through 1/22/18, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

3. On or about 9/20/11 through 1/22/18, the defendant, United States of America, by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

4. On or about 9/20/11 through 1/22/18, the defendant, United States of America, by its agents, servants, or employees, did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

5. If the defendant, United States of America, by its agents, servants, or employees, had informed the plaintiff's decedent of the alternatives to and risks and potential consequences of the

    defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in his position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in his position as to whether to undergo the defendant's choice of treatment.

7. The death of John Perkins and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to obtain the informed consent of the plaintiff's decedent.

    WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## Count VIII.

1. The plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, repeats and reavers all of the allegations contained in Paragraphs One through Seven of Count VII above, as if expressly rewritten and set forth herein.

2. This action is brought to recover for the conscious pain and suffering of the decedent, John Perkins.

3. As the direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, John Perkins, was caused to suffer consciously up to and until his time of death.

    WHEREFORE, the plaintiff, Alexandra Perkins, as duly appointed Personal Representative of the Estate of John Perkins, prays judgment against the defendant, United States of America, in an amount to be determined by a jury, together with interest and costs.

    PLAINTIFF CLAIMS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully submitted,
The plaintiff,
By her attorney,


/s/ Adam R. Satin
ADAM R. SATIN
BBO #633069
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447

10